# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Jason Daniel Ebelsheiser,
Tiffany Joy Ebelsheiser,                                              Case No.  14-01952-als7

                Debtor(s).                                              Chapter 7

Jason Daniel Ebelsheiser,                                             Adv. Pro. 14-30064-als

                Plaintiff

    v.

College Assist

                Defendant.


**MEMORANDUM OF DECISION**
**(date entered on docket: December 9, 2015)**


Plaintiff Jason Daniel Ebelsheiser ("Ebelsheiser") filed this adversary proceeding seeking discharge of his student loan debt pursuant to 11 U.S.C. § 523(a)(8).  The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 157(b)(1) and 1334.  Upon consideration of the evidence and arguments the following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.  For the reasons stated Plaintiff's request to discharge his student loans is denied.

1

DISCUSSION

Over the course of several years Ebelsheiser incurred student loans to finance his education. The majority of his loans were obtained to attend the Palmer College of Chiropractic where he obtained a bachelor's degree in general science and a Doctor of Chiropractic degree. At the time of trial the outstanding balance owed on his consolidated subsidized and unsubsidized loans totaled $181,820 which accrues interest at the fixed rate of 2.875% annually. Starting in 2004 Ebelsheiser owned and operated Hometown Chiropractic LLC located in Oskaloosa, Iowa. In 2010 he was convicted of sexual abuse in the third degree, assault with intent to commit sexual abuse and evidence tampering for which he is currently serving a five year term at a state correctional facility. It is anticipated that his sentence will discharge and he will be released in April 2016.

Student loans are only subject to discharge in bankruptcy under specific circumstances which show that repayment would constitute an "undue hardship on the debtor [or] the debtor's dependents." 11 U.S.C. § 523(a)(8). It is the plaintiff's burden to establish an undue hardship by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289-91 (1991). The concept of "undue hardship" is not defined by the Bankruptcy Code. In this Circuit, courts examine the totality of a debtor's circumstances for the purpose of determining undue hardship. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549 (8th Cir. 2003). This broad test affords the bankruptcy court flexibility to evaluate specific circumstances that may give rise to an undue hardship. *Shadwick v. U.S. Dep't of Educ. (In re Shadwick),* 341 B.R. 6, 11 (Bankr. E.D. Mo. 2006). Three areas of inquiry are relevant under the totality of circumstances analysis: "(1) a debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the

2

debtor's and [any] dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *Long*, 322 F.3d at 554. Each of these will be considered in light of the evidence admitted at trial.

    1. Past, Present, and Reasonably Reliable Future Financial Resources

Ebelsheiser states that he intends to obtain employment and contribute to the household income. However, he raises issues about his ability to reach these future goals. In support of his argument that undue hardship exists he points to the special lifetime sentence imposed under Iowa law as a result of his convictions. Iowa Code § 903B.1 provides in part that: A person convicted of a class "C" felony or greater offense under chapter 709, or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906[1]. No individual under a lifetime sentence has been released from the special parole conditions.

Testimony from Scott Jones, a veteran supervisor of the sex offender unit explained that there are standard regulations governing a parolee's travel, residence and movement. Other specialized restrictions may be imposed, which may include the types and places of employment, but such limitations are tailored to each individual case and the specific circumstances related to the offense(s). He also stated that it was uncertain whether sufficient resources will be allocated in the future for the continued enforcement of special lifetime sentences. No opinion was supplied on what conditions would be imposed upon Ebelsheiser after his release from prison. Information of a general nature was provided about the types of employment and salary that he might anticipate in the future. These hypothetical examples were not verified and may, or may not, be applied to Ebelsheiser. Although it was implied that employers may be hesitant to hire

---

[1] The minimum time period of the special sentence is ten years.

3

Ebelsheiser due to his convictions, there is no evidence that such a situation actually exists or would substantially impair his job search. At best, the evidence merely establishes Ebelsheiser's future employment and income will be different from his previous position and earnings.

The Court cannot rely solely upon the circumstances of the past five years and speculation about future employment to conclude undue hardship exists in this case. *See Walker v. Sallie Mae Servicing Corp., (In re Walker)*, 650 F.3d 1227, 1233 (8th Cir. 2011). There are additional and equally important facts that must be considered. First, Ebelsheiser's chiropractic license was not revoked, it was suspended. He has the ability to reapply for his credentials beginning in 2022. It is not clear at this time whether he will regain his chiropractic license but that possibility has not been foreclosed. Second, Ebelsheiser has had significant work experience in a number of vocations and positions that have included sales, marketing and trucking. Such qualifications improve his ability to obtain employment outside the chiropractic field. Although the family has not considered moving to a larger community, Ebelsheiser stated he was not sure where he would live and did not exclude moving from the realm of possibilities upon his release. A change in location may have the added benefit of providing additional job opportunities. Third, it is more than 25 years until Ebelsheiser reaches retirement age. "In addition to the current and prospective income of the Debtor, the Court must [also] consider the income or earning potential of Debtor's spouse." *Shadwick*, 341 B.R. at 11 n. 5. Tiffany Ebelsheiser ("Tiffany") has no proven record of mental or physical illness which would prevent her from earning a living, and the couple's children have no special needs which would significantly impair her ability to be employed. She has a degree in Human Services and Psychology from Buena Vista University. She did work in her field of study as a caretaker for patients with who were mentally disabled, but left this job due to safety concerns. She owns her

4

own photography business, Et Cetera Studio, where she earns on average $300 a month. She also teaches photography at William Penn University and during the school year earns approximately $436 each month. The family currently receives $339 per month in food assistance. Tiffany also receives assistance from her parents by way of reduced rent, payment of gymnastics fees and sponsorship of a recent trip for their grandchildren to Disney World. Although she is not employed in her field of study, the Court is not convinced that full or part-time employment in the human services field would result in any substantial ability for her to contribute a larger amount to the monthly budget or to assist in making payments on her husband's student loans.

2. Reasonable and Necessary Living Expenses

The second element of the totality of the circumstances test the Court must consider is the reasonable and necessary living expenses of the debtor. *Conway v. Nat'l Collegiate Trust,* 495 B.R. 416, 422 (B.A.P. 8th Cir. 2013). "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" *Id.* (citations omitted). Household expenses were detailed and supported in the monthly amount of $1,895.56.[2] The Court concludes that the family's monthly expenses are reasonable and by no means extravagant. Any reduction in the specific expenses questioned by College Assist would not result in a meaningful improvement in disposable income.

3. Other Relevant Facts and Circumstances

This final area of inquiry evaluates an individual's overall situation in reaching a conclusion on whether a student loan may be discharged for undue hardship. A variety of issues may be considered:

---

[2] This amount does not include payment on student loan obligations owed by Tiffany.

5

>	(1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

*In re Brown*, 378 B.R. 623, 626-27 (Bankr. W.D. Mo. 2007) (citing *VerMaas v. Student Loans of N.D. (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Ark.,* 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002)).  Many of the identified factors have already been addressed and the others can be determined without extensive factual discussion.

Ebelsheiser is 38 years old and has no physical or mental health conditions which prevent him from working upon his release from prison. His previous chiropractic business was profitable and he has a diversity of work experience.  The family budget is frugal and reasonable.  To the extent there are items that could be characterized as unnecessary, these have been paid by a third party.  The ratio of student loan debt Ebelsheiser seeks to discharge represents approximately 40% of the total unsecured debt listed in his joint bankruptcy filing.  Personal liability on the remaining unsecured debt has been discharged.[3]  Whether the primary motivation in seeking bankruptcy relief was to discharge the student loan debt is not clear.  Up until the time of his incarceration Ebelsheiser made payments on his student loan obligations.  Two areas of inquiry remain to be examined under this prong of the totality of the circumstances test: whether the inability to pay the student loan debt stems from a situation outside the control of the debtor

---

[3] The Plaintiff's brief contains references to repayment of restitution claims owed by Ebelsheiser that are the result of his convictions.  Although such claims may not be subject to discharge pursuant to 11 U.S.C. § 523(a) none were listed in the bankruptcy schedules.  No information related to restitution is included in the exhibits admitted at trial.  Due to the lack of evidence on this issue the Court will not consider whether repayment on such claims factors into the analysis of undue hardship in this case.

6

and whether there has been a good faith effort to negotiate forbearance.  Consideration of these factors requires discussion based upon the factual context of this case.

    Ebelsheiser states that if he could return to his field of practice that due to his convictions he would not qualify to receive payments from government programs such as Medicare, Medicaid and some provisions of the Affordable Care Act.  His exclusion from these programs extends until 2031.  Notwithstanding his current suspension, he also contends he would have difficulty meeting the educational requirement to continue practicing in his field of study because of the terms under his parole that will restrict his ability to travel[4] and attend educational classes.  "A debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-imposed limitations, rather than lack of job skills…" *Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund)*, 440 B.R. 168, 174-5 (B.A.P. 8th Cir. 2010); *see also Educ. Credit Mgmt. Corp. v. Jesperson, (In re Jesperson)*, 471 F.3d 775, 782 (8th Cir. 2009); *Nielsen* v. *ACS, Inc.*, 518 B.R. 529, 535 (B.A.P. 8th Cir. 2014), *aff'd*, No. 14-3584, 2015 WL 7067822 (per curium) (8th Cir. Nov. 14, 2015).  Ebelsheiser's case is primarily based upon conditions he believes will adversely affect his future income.  These conditions exist solely because of his conduct and the consequences of his convictions.  For these reasons it is difficult to describe any potential limitations on Ebelsheisher's income as anything other than self-imposed, which does not warrant a finding of undue hardship.

In this Circuit, the availability of an Income Based Repayment Plan ("IBRP") is a factor, but cannot be the only factor, to be considered when evaluating whether student loans may be discharged for undue hardship. *Lee v. Regions Bank Student Loans (In re Lee),* 352 B.R. 91, 95 (B.A.P. 8th Cir. 2006).  During his incarceration Ebelsheiser participated in an IBRP.  Because

---

[4] This does not appear to be an insurmountable issue.  As explained, travel is restricted outside his county of residence without prior approval.  Nothing in the record suggests that permission could not be obtained for the purpose of obtaining mandatory education related to continued employment.

he had no income for the past five years, no payments on his student loans have been required. Tiffany stated, without elaboration, that continued participation in the IBRP would impose an undue hardship on the family. There is no factual basis upon which to conclude that participation under an IBRP would result in an undue hardship in this case. The IBRP provides some balance in protecting the interests of both the borrower and the lender. Earnings below a certain calculated level require no payment on the student loans. It is only upon reaching a specific level of income that payment is triggered. Given his age, experience, education and the distant horizon of the conclusion of his working years, it is reasonable to conclude Ebelsheiser will have future income sufficient to make some payment on his student loans. Participation in an IBRP addresses the concerns expressed by Ebelsheiser while also preserving the possibility of repayment.

## CONCLUSION

"While being a convicted sex offender may limit [Ebelsheiser's] employment options, he brings no proof of this fact, standing alone, [which] establishes that he will be unable to earn or that he will face prospective undue hardship." *Watson v. Sallie Mae and Educ. Credit Mgmt. Corp. (In re Watson)*, Bankr. No. 10-13963, Adv. No. 11-5138, 2012 WL 5360949, at *3 (Bankr. D. Kan. Oct. 30, 2012). For the reasons stated, the Plaintiff has failed to sustain his burden to prove an undue hardship by a preponderance of the evidence.

IT IS HEREBY ORDERED:

1. The Plaintiff's student loan obligations are not excepted from discharge for undue hardship pursuant to 11 U.S.C. § 523(a)(8).

2. Plaintiff's complaint is dismissed.

3. The parties shall bear their own costs.

4. Judgment shall enter accordingly.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding